# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO. 23-cv-60947

GIANNI VERSACE, S.R.L., J. CHOO LIMITED,
AND MICHAEL KORS, L.L.C.,

        Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Gianni Versace, S.r.l., J. Choo Limited, and Michael Kors L.L.C. (collectively "Plaintiffs"),[1] hereby sue Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" (collectively "Defendants"). Defendants are promoting, advertising, distributing, selling, and offering for sale goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiffs' respective trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" (the "E-commerce Store Names"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116 and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject

_____

[1] The Plaintiffs, Gianni Versace, S.r.l., J. Choo Limited, and Michael Kors L.L.C. are related ultimate subsidiaries of Capri Holdings Limited, which is a global leader in luxury lifestyle apparel, footwear and accessories.

matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.     Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through, at least, the e-commerce stores accessible and doing business in Florida and operating under the E-commerce Store Names. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-residents in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFFS

4.     Capri Holdings Limited ("Capri") is a publicly held company incorporated in the British Virgin Islands with its principal place of business located at 33 Kingsway, London, WC2B 6TP, UK. Capri Holdings Limited is the parent company of Plaintiffs Gianni Versace S.r.l., J.Choo Limited, and Michael Kors, L.L.C.

5.     Gianni Versace S.r.l. is an Italian Corporation with its principal place of business located at Via Manzoni Nr. 38, 20121, Milan, Italy.

6.      J. Choo Limited is a United Kingdom Private Limited Company with its principal place of business located at 10 Howick Place London SW1P 1GW, UK.

7.      Michael Kors, L.L.C. is a Delaware limited liability company with its principal place of business in the United States located at 11 West 42nd Street, New York, New York 10036.

8.      Goods bearing the Plaintiffs' registered trademarks set forth below are offered for sale and sold by Plaintiffs and/or their licensees which are related operating companies within the Capri family of companies, through various channels of trade within the State of Florida, including this district, and throughout the United States. Defendants, through the sale and offer to sell counterfeit and infringing versions of Plaintiffs' branded products, are directly and unfairly competing with Plaintiffs' economic interests in the United States, including the State of Florida, and causing Plaintiffs irreparable harm within this jurisdiction.

9.      Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' individual trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with Plaintiffs' names and associated trademarks and the destruction of the legitimate market sector in which they operate.

10.     To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant monetary resources in connection with trademark enforcement efforts, including legal fees, and

investigative fees. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies, such as Plaintiffs, to expend significant resources across a wide spectrum of efforts in order to protect both consumers and themselves from confusion and the erosion of the goodwill embodied in Plaintiffs' respective brands.

## THE DEFENDANTS

11.     Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers, warehouses, and/or storage facilities within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of, at least, their commercial e-commerce stores under the E-commerce Store Names.

12.     Defendants use aliases in connection with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

13.     Defendants are the past and/or present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Plaintiffs' trademarks as described herein.

14.     Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods each bearing and/or using counterfeits and infringements of

one or more of Plaintiffs' individual trademarks to consumers within the United States and this district through Internet based e-commerce stores using, at least, the E-commerce Store Names, as well as additional seller identification aliases not yet known to Plaintiffs. Defendants have purposefully directed some portion of their unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Plaintiffs' goods into the State.

15.     Defendants have registered, established or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration or maintenance of the E-commerce Store Names by providing false and/or misleading information to the relevant e-commerce platforms where they offer to sell and/or sell. Many Defendants have registered and/or maintained some of their E-commerce Store Names for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

16.     Defendants will likely continue to register or acquire new seller identification names, or other aliases, as well as related payment accounts, for the purpose of selling and offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiffs' respective trademarks unless preliminarily and permanently enjoined.

17.     Defendants' E-commerce Store Names, associated payment accounts, and any other alias e-commerce store names, store identification numbers, and seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Plaintiffs' respective trademarks, are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs. Moreover, Defendants are using Plaintiffs' respective famous names and trademarks to drive Internet consumer traffic to at least one of their

e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Plaintiffs' legitimate marketplace and intellectual property rights at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### Versace's Trademark Rights

18.     Versace is the owner of all rights in and to the trademarks identified on Schedule "B" hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Versace Marks"). The Versace Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified in Schedule "B."  True and correct copies of the Certificates of Registration for the Versace Marks are attached hereto as Composite Exhibit "1."

19.     The Versace Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period and serve as symbols of Versace's quality, reputation, and goodwill.

20.     Further, Versace expends substantial resources developing, advertising and otherwise promoting the Versace Marks. The Versace Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

21.     Versace extensively uses, advertises, and promotes the Versace Marks in the United States in connection with the sale of high-quality luxury goods. As a result, the Versace Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

22.     Versace has carefully monitored and policed the use of the Versace Marks and has never assigned or licensed the Versace Marks to any Defendant in this matter.

23.     Genuine goods bearing and/or using the Versace Marks are widely legitimately advertised and promoted by Versace, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Versace's overall marketing and consumer education efforts. Thus, Versace and its authorized distributors expend significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Versace, its related companies, and authorized distributors to educate consumers fairly and legitimately about the value associated with the Versace Marks and the goods sold thereunder.

**Jimmy Choo's Trademark Rights**

24.     Jimmy Choo is the owner of all rights in and to the trademarks identified on Schedule "C" hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Jimmy Choo Marks"). The Jimmy Choo Marks are used in connection with the manufacture and distribution of high-quality luxury goods in the categories identified on Schedule "C."  True and correct copies of the Certificates of Registration for the Jimmy Choo Marks are attached hereto as Composite Exhibit "2."

25.     The Jimmy Choo Marks have been used in interstate commerce to identify and distinguish high-quality luxury goods for an extended period and serve as symbols of Jimmy Choo's quality, reputation and goodwill.

26.     Further, Jimmy Choo expends substantial resources developing, advertising and otherwise promoting the Jimmy Choo Marks. The Jimmy Choo Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

27.     Jimmy Choo extensively uses, advertises, and promotes the Jimmy Choo Marks in the United States in connection with the sale of high-quality luxury goods. As a result, the Jimmy Choo Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality luxury goods.

28.     Jimmy Choo has carefully monitored and policed the use of the Jimmy Choo Marks and has never assigned or licensed the Jimmy Choo Marks to any Defendant in this matter.

29.     Genuine goods bearing and/or using the Jimmy Choo Marks are widely legitimately advertised and promoted by Jimmy Choo, its related companies, and authorized distributors via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms is important to Jimmy Choo's overall marketing and consumer education efforts. Thus, Jimmy Choo expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including SEO, SEM, and social media strategies. Those strategies allow Jimmy Choo and its related companies to educate consumers fairly and legitimately about the value associated with the Jimmy Choo Marks and the goods sold thereunder.

**Michael Kors' Trademark Rights**

30.     Michael Kors is the owner of all rights in and to the trademarks identified on Schedule "D" hereto, which are valid and registered on the Principal Register of the United

States Patent and Trademark Office (collectively, the "Michael Kors Marks"). The Michael Kors Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified on Schedule "D." True and correct copies of the Certificates of Registration for the Michael Kors Marks are attached hereto as Composite Exhibit "3."

31.     The Michael Kors Marks have been used in interstate commerce to identify and distinguish high-quality luxury goods for an extended period and serve as symbols of Michael Kors' quality, reputation and goodwill.

32.     Further, Michael Kors expends substantial resources developing, advertising and otherwise promoting the Michael Kors Marks. The Michael Kors Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

33.     Michael Kors extensively uses, advertises, and promotes the Michael Kors Marks in the United States in connection with the sale of high-quality goods. As a result, the Michael Kors Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality luxury goods.

34.     Michael Kors has carefully monitored and policed the use of the Michael Kors Marks and has never assigned or licensed the Michael Kors Marks to any Defendant in this matter.

35.     Genuine goods bearing and/or using the Michael Kors Marks are widely legitimately advertised and promoted by Michael Kors, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms is important to Michael Kors' overall marketing and consumer education efforts. Thus, Michael Kors expends significant monetary and other resources on Internet

marketing and consumer education regarding its products, including SEO, SEM, and social media strategies. Those strategies allow Michael Kors and its related companies to educate consumers fairly and legitimately about the value associated with the Michael Kors Marks and the goods sold thereunder.

**Defendants' Infringing Activities**

36.     Defendants are each promoting, advertising, distributing, selling, and/or offering for sale goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the Versace Marks, the Jimmy Choo Marks, and/or the Michael Kors Marks (the "Counterfeit Goods") through at least the e-commerce stores operating under the E-commerce Store Names. Specifically, Defendants are each using the Versace Marks, Jimmy Choo Marks, and/or Michael Kors Marks (collectively, "Plaintiffs' Marks") to initially attract online consumers and drive them to Defendants' e-commerce stores operating under the E-commerce Store Names. Defendants are each using identical copies of one or more of the Plaintiffs' Marks for different quality goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' merchandise.

37.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks. The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will

believe all of Defendants' goods offered for sale in or through Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Plaintiffs.

38.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, the E-commerce Store Names. In so doing, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without Plaintiffs' permission.

39.     Defendants are concurrently employing and benefitting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of Plaintiffs' Marks. Specifically, Defendants are using counterfeits and infringements of one or more of Plaintiffs' famous names and Plaintiffs' Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Plaintiffs and non-Plaintiffs' goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Plaintiffs' genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks by viewing inferior products in either the pre or post sale setting, and/or (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brands via the Internet.

40.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and

elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

41.     At all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

42.     Defendants' use of Plaintiffs' Marks, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

43.     Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' respective goodwill and reputations.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

44.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiffs' respective genuine goods and Defendants' Counterfeit Goods, which there is not.

45.     Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiffs and the overall consumer market in which they operate because of Defendants' concurrent actions.

46.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiffs.

47.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names and any other alias seller identification names being used and/or controlled by them.

48.     Further, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

49.     Plaintiffs have no adequate remedy at law.

50.     Plaintiffs are suffering irreparable injury because of Defendants' unauthorized and wrongful use of Plaintiffs' Marks. If Defendants' counterfeiting and infringing and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

51.     The harm sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

52.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 51 above.

53.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

54.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of Plaintiffs' Marks. Defendants are continuously infringing and inducing others to infringe Plaintiffs' Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and infringing goods bearing and/or using Plaintiffs' Marks.

55.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

56.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

57.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' respective rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

58.     Plaintiffs have each suffered and will continue to suffer irreparable injury while Defendants are earning a substantial profit due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

59.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 51 above.

60.     Defendants' Counterfeit Goods bearing, using, offered for sale, and sold using copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States via the E-commerce Store Names.

61.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one or more of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' respective, genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

62.     Defendants have used in connection with their advertisement, offers for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which tend to falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

63.     Defendants have each authorized infringing uses of one or more of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

64.     Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for space

15

within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Plaintiffs of valuable marketing and educational space online which would otherwise be available to Plaintiffs and (ii) reducing the visibility of Plaintiffs' genuine goods on the World Wide Web and across social media platforms.

65.   Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

66.   Plaintiffs have no adequate remedy at law and have each sustained both individual and indivisible injury caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, each Plaintiff will continue to suffer irreparable injury to their respective goodwill and business reputation, while Defendants are earning a substantial profit.

## COUNT III - COMMON LAW UNFAIR COMPETITION

67.   Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 51 above.

68.   This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods bearing and/or using marks that are virtually identical to one or more of Plaintiffs' Marks in violation of Florida's common law of unfair competition.

69.   Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of Plaintiffs' Marks. Defendants are also each using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

70.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of Plaintiffs' Marks.

71.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury because of Defendants' actions, while Defendants are earning a substantial profit.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

72.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 51 above.

73.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using one or more of Plaintiffs' Marks.  Plaintiffs are the owners of all common law rights in and to Plaintiffs' Marks.

74.     Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of Plaintiffs' Marks.

75.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using Plaintiffs' Marks.

76.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury because of Defendants' actions, while Defendants are earning a substantial profit.

## PRAYER FOR RELIEF

77.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' respective name or trademarks; and from otherwise unfairly competing with Plaintiffs.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's

18

inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

        c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-commerce Store Names through which Defendants engage in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of Plaintiffs' Marks.

        d.      Entry of an order pursuant to 28 U.S.C. §1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiffs to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using and/or bearing counterfeits and/or infringements of Plaintiffs' Marks.

        e.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Plaintiffs to serve the injunction on the e-commerce store's registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Plaintiffs the true identities and contact information for the registrants of the E-commerce Store Names.

      f.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. §1651(a), The All Writs Act, and the Court's inherent authority, that upon Plaintiffs' request, Defendants and the top level domain (TLD) Registry for the E-commerce Store Names, and any other e-commerce stores used by Defendants, or their administrators, including backend registry operators or administrators, place the E-commerce Store Names on Registry Hold status for the remainder of the registration period for any such name, thus removing them from the TLD zone files which link the E-commerce Store Names, and any other e-commerce store names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks, to the IP addresses where the associated e-commerce stores are hosted.

      g.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiffs' election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendants to engage in their counterfeiting of Plaintiffs' Marks at issue to Plaintiffs' control so they may no longer be used for unlawful purposes.

      h.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to their E-commerce Store Name(s) and any other e-commerce store names used by Defendants to Plaintiffs and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.     Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct in writing, all search engines to permanently delist or deindex the E-commerce Store Name(s) and any other e-commerce store names used by Defendants and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, any Internet marketplace website operators, administrators, registrars and/or top level domain (TLD) Registry for the E-commerce Store Names who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective E-commerce Store Names.

k.     Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits earned resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the profit award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

l.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

m.     Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow

services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names or other alias seller identification names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

        n.     Entry of an award of pre-judgment interest on the judgment amount.

        o.     Entry of an order requiring Defendants, at Plaintiffs' request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

        p.     Entry of an order for any further relief as the Court may deem just and proper.

DATED: May 22, 2023.        Respectfully submitted,

            STEPHEN M. GAFFIGAN, P.A.

            By: **Stephen M. Gaffigan**
            Stephen M. Gaffigan (Fla. Bar No. 025844)
            Virgilio Gigante (Fla. Bar No. 082635)
            T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
            Christine Ann Daley (Fla. Bar No. 98482)
            401 East Las Olas Blvd., #130-453
            Ft. Lauderdale, Florida 33301
            Telephone: (954) 767-4819
            E-mail: Stephen@smgpa.cloud
            E-mail: Leo@smgpa.cloud
            E-mail: Raquel@smgpa.cloud
            E-mail: Christine@smgpa.cloud

            Attorneys for PLAINTIFFS

## SCHEDULE "A"

**[This page is the subject of Plaintiffs' Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**

### SCHEDULE "A"
### <u>VERSACE'S FEDERALLY REGISTERED TRADEMARKS</u>

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| VERSACE | 2,121,984 | December 16, 1997 | IC 018: leather or imitations of leather, namely, animal skins and hides, handbags, wallets, luggage, attache cases, tote bags, briefcases, all-purpose sport bags, travelling trunks and carry-on bags, shoulder bags, garment bags for travelling, keycases, umbrellas.<br><br>IC 025: clothing for men, women and children, namely belts, coats, raincoats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, suits, shirts and chemises, T-shirts, sweaters, underwear, socks and stockings, gloves, ties, scarves, hats and caps, boots, shoes and slippers. |
| VERSACE | 2,440,541 | April 3, 2001 | IC 024: bath linen, bath mats, bed linen; blankets; * unfitted fabric * furniture covers.<br><br>IC 021: household or kitchen utensils and containers; dinnerware; beverage ware glassware sugar bowls; bottle openers; bowls; candle holders not of precious metal; china ornaments; soap dispensers; figurines in china, crystal, porcelain holders for flowers and plants; * flower baskets; plates; pots, soap boxes; soap holders; vases; parts and fittings for the aforesaid goods.<br><br>IC 024: bath linen, bath mats, bed linen; blankets; * unfitted fabric * furniture covers |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 2,980,455 | August 2, 2005 | IC 014: Articles made of precious metals and alloys of precious metals with or without precious stones, namely rings, necklaces, bracelets, brooches, earrings, tie clips, cuff-links, diamonds, jewelry cases made of precious metal, watches, clocks, chronometers, watch cases, costume jewelry.<br>IC 018: Leather and imitation of leather sold in bulk, handbags, wallets, luggage, attache cases, tote bags, briefcases, sport bags, traveling trunks, carry-on bags, shoulder bags, garment bags for traveling, key cases, umbrellas, parasols, walking sticks, whips, harnesses, saddlery; leather key chains.<br>IC 020: Furniture; mirrors, namely looking glasses; picture frames; chairs; cupboards; cushions; desks; divans; plastic and wood doorknobs; figures of bone, ivory, plaster, plastic, wax and wood; plastic and wood furniture handles for doors, plastic key chains; magazine racks; office furniture; pillows; fitted furniture covers.<br>IC 021: Household or kitchen utensils and containers, namely, dinnerware; beverage-ware; glassware; sugar bowls; beer mugs; bottle openers; bowls; candle holders not of precious metal; china ornaments; cookware, namely non-electric frying pans; corkscrews; soap dispensers; figurines in China, crystal, earthenware, glass, porcelain and terracotta; holders for flowers and plants; perfume atomizers sold empty; plates; pots; soapboxes; soap holders; vases; flower baskets; porcelain and earthenware doorknobs and furniture handles for doors.<br>IC 024: Fabric for textile use, fabric of imitation animal skins, fabric for boots and shoes, bath linen; bed linen; blankets; curtains; unfitted furniture covers; handkerchiefs; kitchen towels; textile wall hangings.<br>IC 025: Clothing for men, women and children, namely belts, coats, raincoats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, suits, shirts and chemises, T-shirts, sweaters, underwear, socks and stockings, gloves, ties, scarves, hats and caps, boots, shoes and slippers.<br>IC 027: Carpets, rugs, mats and matting, linoleum and other materials for covering existing floors; non-textile wall hangings; non-textile wall decorations. |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| 𐎢𐎢𐎢𐎢𐎢𐎢 | 3,194,501 | January 2, 2007 | IC 014: Articles made of precious metals and alloys of precious metals, with or without precious stones, namely, rings, necklaces, bracelets, earrings, tie clips, cuff-links, watches, costume jewellery.<br><br>IC 018: Leather and imitation leather goods, namely, handbags, wallets, luggage, attaché cases, tote bags, briefcases, sport bags, traveling trunks, carry-on bags, shoulder bags, garment bags for traveling.<br><br>IC 024: Fabric for textile use, fabric for boots and shoes, bath linen, bed linen; bed blankets; unfitted fabric furniture covers<br><br>IC 025: Clothing for men, women and children, namely belts, coats, raincoats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, suits, shirts and chemises, t-shirts, sweaters, underwear, socks and stockings, gloves, ties, scarves, hats and caps, boots, shoes and slippers |
| (circular design) | 3,199,127 | January 16, 2007 | IC 014: Articles made of precious metals and alloys of precious metals, with or without precious stones, namely, rings, necklaces, bracelets, brooches, earrings, tie clips, cuff-links, watches, watch cases, costume jewellery, parts and fittings for all the aforesaid goods<br><br>IC 018: Leather and imitation leather goods, namely, handbags, wallets, luggage, tote bags, briefcases, sport bags, carry-on bags, shoulder bags, garment bags for traveling, key cases<br><br>IC 024: Fabric for textile use, fabric of imitation animal skins, fabric for boots and shoes, bath linen, bed linen; bed blankets; and kitchen towels |

26

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 3,453,992 | June 24, 2008 | IC 018: Leather and imitation leather goods, namely, handbags, wallets, luggage, tote bags, key cases<br><br>IC 020: Furniture; mirrors, namely, looking glasses; cushions; desks; divans; office furniture; pillows; parts and fittings for the aforesaid furniture goods, namely, fitted furniture covers not of paper<br><br>IC 024: bath linen; bed linen; bed blankets<br><br>IC 025: Clothing for men, women and children, namely, belts, coats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, shirts and chemises, T-shirts, underwear, socks and stockings, gloves, ties, scarves, hats and caps, shoes and slippers |
| VERSACE JEANS COUTURE | 2,426,052 | February 6, 2001 | IC 018: Athletic bags, attache cases, bags for all purposes, namely,; for all sport purpose, beach bags, book bags, carry-on bags, gym bags, handbags, leather shopping bags, overnight bags, textile shopping bags, tote bags, shoulder bags, travel bags, suitcases, briefcases-type portfolios, briefcases, business card cases, calling card cases, credit card cases, purses, cosmetic cases, document cases, garment bags for travel, key cases, parasols, saddlery, shoes bags for travel, umbrellas, wallets<br><br>IC 025: After ski boots, ascots, athletic footwear, athletic shoes, athletic uniforms, head bands, neck bands, sweat bands, wrist bands, bathing suits, bathrobes, beachwear, bed jackets, belts, berets, bermuda shorts, bikinis, blouses, blousons, body suits, bootsboxer shorts, brassieres, underwear briefs, bustiers, camisoles, clothing caps, cardigans, chemises, coats, fur coats, fur jackets, fur stoles, leather coats, over coats, rain coats, suit coats, corsets, culottes, dresses, evening gowns, night gowns, ear muffs, espadrilles, footwear, gloves, hats, head wear, infantwear, jeans, jogging suits, kilts, lingerie, clothing mantles, moccasins, neckerchiefs, night shirts, pajamas, pants, pantyhose, pareu, parkas, poloshirts, pullovers, sandals, shoes, shorts, ski wear, slippers, slips, socks, stocking |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| VERSACE | 4,398,385 | September 10, 2013 | IC 014: Articles made of precious metals and alloys of precious metals with or without precious stones, namely, rings, necklaces, bracelets, earrings, cufflinks, watches<br><br>IC 027: bath mats |

**SCHEDULE "B"**
**JIMMY CHOO'S FEDERALLY REGISTERED TRADEMARKS**

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| JIMMY CHOO | 2,641,408 | October 29, 2002 | IC 025: footwear, namely, boots and shoes. |
| JIMMY CHOO | 3,491,347 | August 26, 2008 | IC 025: Footwear, namely, boots, shoes, sandals, slippers, sneakers; headgear, namely, hats, scarves, baseball caps |

SCHEDULE "C"
MICHAEL KORS' FEDERALLY REGISTERED TRADEMARKS

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| MICHAEL KORS | 2,520,757 | December 18, 2001 | IC 018: handbags, billfolds, credit card cases, key cases, tote bags |
| MICHAEL MICHAEL KORS | 3,080,631 | May 3, 2005 | IC 009: eyeglass frames, eyeglasses, sunglasses, eyeglass cases. IC 018: bags, namely, tote bags; handbags; purses; wallets. <br><br> IC 025: Men's and women's clothing, namely, dresses, skirts, blouses, pants, jackets, blazers, coats, raincoats, capes, ponchos, scarves, hats, gloves, sweaters, belts, bathing suits, halter tops, jeans, warm up suits, sweatshirts, sweatpants, leggings, shorts, slacks, sport coats, sport shirts, suits, t-shirts, vests, ties; undergarments for women, namely, camisoles; footwear and headwear; belts. |
| MK MICHAEL KORS | 3,438,412 | May 27, 2008 | IC 018: Handbags. <br><br> IC 025: Men's and women's clothing, namely, dresses, skirts, blouses, pants, jackets, blazers, coats, sweaters, belts, jeans, sweatshirts, shorts, slacks, sport coats, T-shirts; footwear and headwear; belts. |
| MICHAEL KORS | 4,334,410 | May 14, 2013 | IC 009: Protective cases, covers and carrying cases for mobile phones, portable media players, personal digital assistants, laptops and tablet computers. |